UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KELLY CASON HARVEY,

        Plaintiff,

vs.                                        Case No.  3:08-cv-455-J-25MCR

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

        Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying her application for Social Security benefits.  The Court has reviewed

the record, the briefs, and the applicable law.  For the reasons set forth herein, the

Commissioner's decision is **AFFIRMED**.

## I.     PROCEDURAL HISTORY

Plaintiff protectively filed an application for a period of disability and disability

insurance benefits ("DIB") and Supplemental Security Income ("SSI") on May 16, 2005,

alleging an inability to work beginning December 31, 2002.  (Tr. 52, 96).  The Social

Security Administration ("SSA") denied this application initially and on reconsideration,

and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 28).

The hearing was held on June 18, 2007.  (Tr. 525-556).  The ALJ issued a decision on

December 14, 2007, finding Plaintiff not disabled.  (Tr. 7-16).  The Appeals Council

_____

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate
Judge.  (Doc. 13).

1

denied Plaintiff's request for review on February 28, 2008, thus making the ALJ's December 14, 2007 decision the final decision of the Commissioner. (Tr. 3-5). Plaintiff timely filed her Complaint in the U.S. District Court for review of the Commissioner's decision. (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claimed to be disabled since December 31, 2002, mainly due to Hepatitis C and chronic obstructive pulmonary disease ("COPD"). (Tr. 95). Specifically, Plaintiff alleged she tired easily and was sick ninety (90) percent of the time due to the Hepatitis C. (Tr. 96). Plaintiff claimed the treatment for Hepatitis C caused fatigue, nausea, vomiting, bleeding, and bruising. (Tr. 62).

### B.    Summary of Evidence Before the ALJ

#### 1.  Medical Evidence

Plaintiff was 48 years of age at the time the ALJ conducted the administrative hearing. (Tr. 46, 48). Plaintiff possesses a high school education and has past relevant work experience as a pharmacy technician. (Tr. 93, 99).

In March of 2005, Plaintiff's primary care physician, Natalia Shiriaeva, M.D., referred Plaintiff to the Hepatology Clinic at Shands University of Florida ("Shands") for evaluation and treatment of chronic Hepatitis C. (Tr. 196). However, Plaintiff was first diagnosed with Hepatitis C in 1990, secondary to prior blood transfusions.[2] (Tr. 136). On April 5, 2005, Consuello Soldevila-Pico, M.D. of Shands completed an evaluation of

---

[2]The record also indicates Plaintiff was diagnosed with Hepatitis C when attempting to donate blood. (Tr. 196).

Plaintiff. (Tr. 197). Dr. Soldevila-Pico noted Plaintiff was feeling great. (Tr. 196). Plaintiff denied any recent abdominal pain, nausea, vomiting, fever, or chills. Id. Plaintiff also denied any unintentional weight loss, change in appetite, or fatigue. Id. Plaintiff indicated she had smoked two packs of cigarettes per day for 28 years. Id. Plaintiff admitted to smoking one-half pack of cigarettes per day, but indicated she was trying to stop. Id. Plaintiff was not working. Id. Dr. Soldevila-Pico diagnosed chronic Hepatitis C infection and recommended a Hepatitis C RNA test be performed to determine Plaintiff's genotype. Id. Dr. Soldevila-Pico also recommended a liver biopsy for staging and strongly advised Plaintiff to stop smoking. (Tr. 197). Dr. Soldevila-Pico recommended treatment with pegylated Interferon and Ribavirin. Id. Plaintiff's liver biopsy was performed on April 18, 2005. (Tr. 261). Plaintiff's liver tissue showed mild chronic Hepatitis C, HAI grade 3, with portal stage 2/6 fibrosis. Id.

Plaintiff began treatment with Shands hepatology outpatient department on June 14, 2005. (Tr 468). Her treatment involved therapy with Pegasys and Ribavirin. (Tr. 464). Plaintiff saw Dr. Shiriaeva on July 7, 2005. (Tr. 503). Plaintiff's chief complaints were thrush and spots on the top of her mouth. Id. Plaintiff had no pain. Id. Plaintiff saw Dr. Shiriaeva again on July 21, 2005. (Tr. 502). Dr. Shiriaeva noted Plaintiff was experiencing depression and anxiety. Id.

On August 8, 2005, Dr. Robert A. Greenberg performed a consultative examination of Plaintiff. (Tr. 136 - 137). Dr. Greenberg noted Plaintiff had multiple tattoos that could have caused the Hepatitis C. (Tr. 136). Dr. Greenberg also found Plaintiff had shortness of breath, secondary to previous cigarette smoking; Hepatitis C; and probable osteoarthritis of the cervical spine from previous injury. (Tr. 137).

3

On August 16, 2005, Plaintiff returned to Dr. Shiriaeva. (Tr. 500). Plaintiff's chief complaint was fatigue due to chemotherapy for Hepatitis C. Id. Dr. Shiriaeva also noted Plaintiff was suffering from depression and her skin was pale. Id. On August 18, 2005, Plaintiff had completed nine (9) weeks of therapy for chronic Hepatitis C, genotype IA with stage 2/6 fibrosis. (Tr. 464). Plaintiff had remained hematologically stable and her dosage of medication had remained the same. Id. However, Plaintiff reported significant nausea and diarrhea after the previous week's Interferon injection. Id. Plaintiff was bothered by fatigue and heat intolerance. Id. Plaintiff experienced dyspnea secondary to COPD, possibly worsened with the Hepatitis C treatment. Id. Plaintiff denied any vomiting, melena, chest pain, or depression. Id.

On September 1, 2005, a non-examining state agency physician, J. Vergo Attlesey, M.D., opined Plaintiff could occasionally lift and/or carry twenty (20) pounds; frequently lift and/or carry 10 pounds; stand and/or walk about six (6) hours in an eight (8) hour workday; and sit about six (6) hours in an eight (8) hour workday. (Tr. 157). Dr. Attlesey opined Plaintiff had an unlimited ability to push and/or pull. Id. In terms of postural limitations, Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl, due to fatigue and shortness of breath. (Tr. 158). Plaintiff had no manipulative, visual, or communicative limitations. (Tr. 159). However, in terms of environmental limitations, Dr. Attlesey opined Plaintiff should avoid fumes, odors, dust, gases etc. and any hazards such as heights or machinery. (Tr. 160).

At Plaintiff's next visit to Shands's GI Clinic on September 19, 2005, Plaintiff was tolerating the therapy well and her only complaint was nausea associated with postprandial bloating in the morning and progressive throughout the day. (Tr. 460). In

4

addition to chronic Hepatitis C virus genotype IA at 14 weeks of Pegasys and Ribavirin, Plaintiff's assessment included medication induced anemia and persistently elevated transaminases. Id. Plaintiff saw Dr. Shiriaeva on September 21, 2005. (Tr. 348). Plaintiff complained of severe nausea and bloating. Id. Dr. Shiriaeva noted Plaintiff was fatigued and jaundiced in her appearance. Id. Dr. Shiriaeva assessed abdominal pain, bad bloating, and nausea. Id. Plaintiff was admitted to Shands hospital on September 21, 2005 with diagnoses of abdominal pain, Hepatitis C on chemotherapy, nausea, and vomiting. (Tr. 176). Plaintiff was pale and anxious. Id. Plaintiff's abdomen was distended, tender in epigastrium, diffusely tympanitic, and quite tender. Id. The abdominal series and chest x-ray performed showed no radiographic evidence of acute cardiopulmonary disease and Plaintiff's bowel gas pattern was nonobstructive. (Tr. 349). George L. Restea, M.D. discharged Plaintiff on September 23, 2005. (Tr. 177). Plaintiff's discharge diagnosis was acute gastroenteritis, Hepatitis C, with possible medication side effects from Pegasys, and chronic depression. (Tr. 176). However, Plaintiff's abdomen was soft, Plaintiff's nausea was largely resolved, and Plaintiff was in satisfactory condition. (Tr. 177).

On September 26, 2005, Plaintiff contacted the GI clinic at Shands to discuss the onset of gastrointestinal complaints. (Tr. 458). Plaintiff complained of postprandial bloating and occasional nausea. Id. Plaintiff denied any vomiting, constipation, diarrhea, melena, or hematochezia. Id. A prescription for Reglan was called in for Plaintiff. Id. On September 30, 2005, Plaintiff presented to Dr. Shiriaeva for her hospital stay follow-up. (Tr. 346). Plaintiff's abdomen was slightly distended, bloated, and tender. Id.

On October 10, 2005, Plaintiff was seen at Shands for nausea and bloating. (Tr. 189). A CAT scan showed Plaintiff had a slightly contracted gallbladder, but the ultrasound of Plaintiff's gallbladder was normal. Id. Plaintiff's liver function tests were normal except her "Asp transaminase" was mildly elevated. Id. Bassam G. Rizk, M.D. examined Plaintiff. Id. Dr. Rizk noted Plaintiff had not lost weight. Id. Plaintiff had no fever, no chills, and no discoloration of her urine or stool. Id. Plaintiff had no chest pain, but she had some shortness of breath related to the COPD. Id. Plaintiff had no changes in bowel habit, no dysuria or hermaturia. Id. Plaintiff had some symptoms of anxiety. Id. Upon examination, Dr. Rizk found Plaintiff had minimal discomfort in the epigastric area, but her abdomen was soft. Id. Dr. Rizk ruled out peptic ulcer disease. Id. On October 11, 2005, Plaintiff called Shands's GI clinic again and reported that the abdominal bloating and nausea were not improved with Reglan. Id. Plaintiff was instructed to discontinue Reglan. Id. On October 27, 2005, Plaintiff underwent an esophagogastroduodenoscopy with a biopsy. (Tr. 188). After the procedure, Plaintiff was diagnosed with severe gastritis. Id.

Dr. Shiriaeva examined Plaintiff on October 28, 2005. (Tr. 335). Plaintiff's chief complaint was nausea. Id. Dr. Shiriaeva noted Plaintiff was bloated, anxious, and depressed. Id. Plaintiff was seen by Dr. Shiriaeva on November 16, 2005 and November 29, 2005, for the flu. (Tr. 330, 331). On each visit, Dr. Shiriaeva noted Plaintiff was bloated and her abdomen was tender. Id.

GI Clinic notes dated December 1, 2005, indicate Plaintiff was twelve (12) weeks into her therapy at that point. (Tr. 452). Symptomatically, Plaintiff had persistent nausea and bloating. Id. Plaintiff had an increase in shortness of breath and dyspnea,

6

associated with her COPD.  Id.  Dr. Soldevila-Pico determined Plaintiff's persistent nausea and bloating was most likely related to her medication.  (Tr. 453).  On December 8, 2005, Plaintiff was seen by Dr. Shiriaeva who noted Plaintiff was bloated and recommended a gastric emptying study be performed.  (Tr. 326).

On January 5, 2006, Plaintiff had completed 29 weeks of treatment for chronic Hepatitis C.  (Tr. 443).  Plaintiff had a significant increase in GI symptoms including, nausea and bloating, despite treatment with Reglan and Nexium.  (Tr. 442).  Plaintiff reported some anxiety, but the doctor noted her overall mood remained stable.  Id.  On January 27, 2006, Plaintiff underwent a gastric emptying study to evaluate her nausea and bloating.  (Tr. 415, 440).  Plaintiff was diagnosed with gastroparesis and Zelnorm was prescribed.  (Tr. 415).  On January 30, 2006 and February 13, 2006 when Plaintiff saw Dr. Shiriaeva, Plaintiff's chief complaints were depression and dyspepsia.  (Tr. 306, 307).

On February 3, 2006, Plaintiff visited the Pulmonary Clinic at Shands for an evaluation of COPD.  (Tr. 428).  Eric L. Olson, M.D. noted mild COPD with mild gas trapping, but normal gas exchange and near normal spirometry.  (Tr. 430).  Dr. Olson determined Plaintiff was on a very good medical regimen and recommended to Dr. Shiriaeva that Plaintiff continue with the therapy she was receiving.  Id.

On February 24, 2006, Terry Rees M.D., a non-examining, state agency physician completed a Physical Residual Functional Capacity Assessment form for Plaintiff.  Dr. Rees indicated Plaintiff could occasionally lift and/or carry twenty (20) pounds; frequently lift and/or carry 10 pounds; stand and/or walk about six (6) hours in an eight (8) hour workday; and sit about six (6) hours in an eight (8) hour workday.  (Tr.

268).  Plaintiff had an unlimited ability to push and/or pull.  Id.  Dr. Rees opined Plaintiff

had no manipulative, visual, or communicative limitations.  (Tr. 270 -271).  Dr. Rees

also indicated Plaintiff should avoid fumes, odors, dusts, gases, poor ventilation and

hazards such as machinery and heights.  (Tr. 271).

 At thirty-eight (38) weeks of treatment, on March 7, 2006, Plaintiff was

experiencing increased stressors at home which were contributing to her anxiety,

however, Plaintiff denied overt depression.  Id.  Plaintiff reported that her nausea had

improved since starting Zelnorm.  (Tr. 415).  It was also noted Plaintiff had a history of

COPD and her exertional dyspnea and wheezing had been exacerbated with the

treatment for Hepatitis C.  Id.

Dr. Shiriaeva saw Plaintiff on March 6, 2006, April 5, 2006, and April 13, 2006.

(Tr. 301, 302, 303).  On March 6, 2006, Plaintiff's chief complaint was anxiety and

Plaintiff's abdomen was soft and tender.  (Tr. 303).  On April 5, 2006, Plaintiff was seen

for a follow-up regarding her breathing difficulties.  (Tr. 302).  On April 13, 2006,

Plaintiff's chief complaints included anxiety and shortness of breath.  (Tr. 301).

Plaintiff's mood was depressed, but her breathing difficulties were improved.  Id.

The clinic notes from April 20, 2006 show that overall, Plaintiff had tolerated her

Hepatitis C treatment well.  (Tr. 413).  Plaintiff's full 12-point review of systems was

negative and her diagnoses were Hepatitis C virus, genotype 1, stage 2/6 fibrosis, forty-

four (44) weeks of therapy with pegylated Interferon and Ribavirin, hemolytic anemia,

and COPD.  Id.  A focal physical exam was performed which showed no signs of

worsening liver disease.  Id.  When Plaintiff saw Dr. Shiriaeva on April 26, 2006,

Plaintiff's fatigue had improved, but Plaintiff had increased tension, chronic anxiety, and

depression.  (Tr. 294).

Jarret House, M.D. completed a Mental Impairment Questionnaire on March 15, 2006.  (Tr. 278).  Dr. House indicated his responses on the questionnaire were not relevant to the time period on or before December 31, 2005, Plaintiff's date of last insured.  Id.  Dr. House had seen Plaintiff bi-monthly since January 17, 2006.  (Tr. 275).  Dr. House stated a combination of individual and supportive psychotherapy and medication management had only begun to address patient's depressive symptoms.  Id.  Plaintiff's prescribed medications were listed as Lexapro, Wellbutrin, and Xanax.  Id.  Dr. House's clinical findings included depressed mood, insomnia, hyperphagia, and fatigue.  Id.  However, Dr. House indicated Plaintiff's prognosis was fair and he opined Plaintiff's depressive state likely exacerbated her perception of pain.  (Tr. 276-277).  Dr. House opined Plaintiff had moderate restrictions in her activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence, or pace.  (Tr. 277).  Dr. House also opined Plaintiff experienced one or two episodes of decompensation within a twelve (12) month period, each lasting at least two weeks.  Id.

On April 15, 2006, Dr. Shiriaeva completed a Mental Impairment Questionnaire and a Medical Opinion Re: Plaintiff's Ability to do Work-Related Activities.  (Tr. 278 - 285).  On the Mental Impairment Questionnaire, Dr. Shiriaeva indicated Plaintiff was taking an anti-depressant for depression, panic attacks, and affective mood disorder.  (Tr. 279).  Dr. Shiriaeva stated Plaintiff's side-effects from the medication were dizziness, drowsiness, fatigue, lethargy, and stomach upset.  Id.  Dr. Shiriaeva opined Plaintiff had moderate restriction of activities of daily living; marked difficulties in

maintaining social functioning; and extreme difficulties in maintaining concentration, persistence, or pace.  (Tr. 281).  Dr. Shiriaeva indicated Plaintiff had a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.  Id.  Dr. Shiriaeva also stated Plaintiff had an anxiety related disorder and a complete inability to function independently outside her home.  (Tr. 282).  Dr. Shiriaeva noted in addition to Plaintiff's mental impairments, Plaintiff had a severe case of Hepatitis C for which she received prolonged treatment that caused severe physical and psychological side-effects.  Id.  Dr. Shiriaeva opined Plaintiff would have difficulty working a regular job on a sustained basis because of the Hepatitis C and the side effects from the treatment.  Id.  On the Ability to Do Work-Related Activities form, Dr. Shiriaeva indicated Plaintiff had severe physical limitations and was unable to work because of a herniated disc and fatigue so strong Plaintiff wanted to lie down all the time.  (Tr. 284).  Dr. Shiriaeva indicated her responses on both of these forms were relevant to the time period on or before December 31, 2005.  (Tr. 282, 285).

On May 16, 2006, Plaintiff received her final round of treatment for chronic Hepatitis C, genotype 1A with stage 2/6 fibrosis.  (Tr. 404).  Plaintiff reported that her abdominal bloating and nausea had much improved with Zelnorm.  Id.  Despite continued anxiety symptoms, Plaintiff's mood remained stable.  Id.  Plaintiff's treatment notes showed Plaintiff was able to maintain the full dosage of the Hepatitis C medication for the majority of the treatment period.  (Tr. 396, 405).  Further, the clinician noted Plaintiff had an exacerbation of COPD and gastroparesis with treatment, but expressed the hope that those symptoms would improve as the Hepatitis medication cleared from

10

her system.  Id.

On February 6, 2007, nine (9) months after Plaintiff's 48-week treatment course, Plaintiff was seen in the Liver Care Clinic at Shands for a follow-up visit.  (Tr. 402). Plaintiff reported feeling much better since the discontinuation of her treatment and Plaintiff had returned to work full-time.  Id.  Plaintiff denied any abdominal bloating, nausea, vomiting, diarrhea, constipation, melena, hematocheezia, dyspnea, chest pain, or edema.  Id.  Plaintiff's mood remained stable.  Id.

### 2.  Other Evidence

Plaintiff's administrative hearing was held on June 18, 2007 in Ocala, Florida. (Tr. 525).  Appearances were entered by Plaintiff; Plaintiff's attorney, William Horne Esq.; Vocational Expert, Jane Beougher; and Frank Hajosch, a witness on behalf of Plaintiff.  Id.  During the hearing, the ALJ asked Plaintiff to clarify the dates requested for the closed period of disability.  (Tr. 533).  Plaintiff requested a closed period from November 1, 2004 to March 1, 2006.  Id.  Plaintiff testified she stopped working in January of 2004.  (Tr. 536).  Plaintiff indicated that at that time, she was receiving VA widow's benefits due to her husband's death, as well as a small pension from the post office where her husband worked at the time of his death.  Id.  Plaintiff stated she returned to work on July 17, 2006, at Baptist Medical Center in Jacksonville.  (Tr. 536).

Plaintiff testified that during her Interferon treatment, she slept sixteen (16) hours per day.  (Tr. 537).  Plaintiff stated the treatment medication created severe anxiety, depression, and fatigue.  Id.  Plaintiff testified she was taking Pegasys and Copegus, one injection per week and five pills per day, in June of 2005.  (Tr. 539).  Plaintiff indicated that on her alleged onset date, November 1, 2004, she had problems

breathing, much fatigue, and dizziness, but she was not seeing a doctor. (Tr. 540). Despite the absence of records predating July 2005, Plaintiff stated she first saw Dr. Shiriaeva in February 2005. Id.

Plaintiff testified she had a friend, Mr. Frank Hajosch, who administered some of her injections, did her house cleaning and grocery shopping, and drove her to out-of-town appointments during the time she was being treated. (Tr. 543). Plaintiff also testified depression and anxiety were side effects of the Pegasys and Copegus, along with fatigue, nausea, vomiting, and loss of vision. (Tr. 545). Plaintiff stated she was unable to walk more than 100 feet due to exhaustion. (Tr. 546). Mr. Hajosch testified he helped Plaintiff for about one year, from April of 2005 through April of 2006. (Tr. 547, 548). Mr. Hajosch indicated he gave Plaintiff her shots, mowed her grass, did some housework, and drove her around to see the doctors who were out-of-town. Id. At the close of the hearing, the ALJ gave Plaintiff ten (10) days to submit medical records predating July 2005. (Tr. 554-555).

Subsequent to the hearing, in letters dated July 3, 2007, July 24, 2007, and August 20, 2007, Plaintiff requested a closed period of disability beginning June 14, 2005 and ending June 14, 2006. (Tr. 513, 514, 515). The closed period Plaintiff requested was a 52 week period encompassing her 48-week interferon therapy for Hepatitis C. Id.

C.      Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous

period of not less than 12 months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. §

404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  <u>See</u> 20

C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful

activity, she is not disabled.  29 C.F.R. § 404.1520(b), 416.920(a)(2)(i).  Second, if a

claimant does not have any impairment or combination of impairments which

significantly limit her physical or mental ability to do basic work activities, then she does

not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c),

416.920(a)(2)(ii).  Third, if a claimant's impairments meet or equal an impairment listed

in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. §

404.1520(d), 416.920(a)(2)(iii).  Fourth, if a claimant's impairments do not prevent her

from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e),

416.920(a)(2)(iv).  Fifth, if a claimant's impairments (considering her residual functional

capacity, age, education, and past work) prevent her from doing other work that exists

in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f),

416.920(a)(2)(v).  Plaintiff bears the burden of persuasion through step four, while at

step five, the burden shifts to the Commissioner.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146,

107 S.Ct. 2287 n.5 (1987).

        In the instant case, at step one, the ALJ found Plaintiff did not engage in

substantial gainful activity at any time from her alleged onset date of November 1, 2004

through her date of last insured, December 31, 2005.  (Tr. 12).  At steps two and three,

the ALJ found Plaintiff had the following medically determinable impairments: Hepatitis

C and COPD.  <u>Id.</u>  However, the ALJ determined Plaintiff's impairments did not

significantly limit her ability to perform basic work-related activities for twelve (12)

consecutive months and therefore, were not severe.  Id.

The ALJ found Plaintiff's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but she found Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms were not entirely credible.  (Tr. 15).  Additionally, the ALJ found the opinion of Plaintiff's treating physician, Dr. Shiriaeva, was not supported by the medical records.  Id. However, the ALJ placed substantial weight on the report of Plaintiff's consultative physician, Dr. Greenberg, because she found his examination of Plaintiff thorough and consistent with the evidence of record.  Id.  In this case, the ALJ also discredited the assessments of the non-examining state agency doctors who concluded Plaintiff only had residual functional capacity to perform a range of light work.  (Tr. 16).  The ALJ found the state agency findings were not supported by the weight of the evidence.  Id. The ALJ determined the objective evidence showed Plaintiff's treatment lasted less than twelve (12) months and "primarily caused fatigue."  Id.  The ALJ found there was no documentation to support a finding that Plaintiff was unable to perform basic work activities during the closed period requested.  Id.  Accordingly, at step four, the ALJ concluded Plaintiff was not disabled at any time from November 1, 2004, the alleged onset date, through December 31, 2005, the date last insured.  Id.

III.    ANALYSIS

A.    The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir.

1988), and whether the findings are supported by substantial evidence.  Richardson v.

Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact

are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial

evidence is more than a scintilla – i.e., the evidence must do more than merely create a

suspicion of the existence of a fact, and must include such relevant evidence as a

reasonable person would accept as adequate to support the conclusion.  Foote v.

Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835,

838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991);

Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view

the evidence as a whole, taking into account evidence favorable as well as unfavorable

to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837

(11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of

factual findings).

**B.** **Issues on Appeal**

On appeal, Plaintiff argues first, that the ALJ erred in finding Plaintiff was not

entitled to the closed period of disability requested; second, that the ALJ erred by not

finding Plaintiff's medically determinable impairments and symptoms were severe; and

third, that the ALJ's analysis of the medical evidence was incorrect.  (Doc. 23, p. 4-14).

In a fourth section entitled "Return to Work," Plaintiff claims she did not ask for more

than she believed was appropriate. (Doc. 23, p. 14). However, as the Commissioner points out, Plaintiff fails to make a legal argument. As such, the Court finds there is no issue raised in that section which warrants discussion. Rowe v. Schreiber, 139 F. 3d, 1381, 1382 n. 1 (11th Cir. 1998) (noting in the absence of an argument, an issue is deemed abandoned); see Callahan v. Barnhart, 186 F. Supp. 2d 1219, 1230 n. 5 (M.D. Fla. 2002); see also Continental Technical Services, Inc. v. Rockwell International Corp., 927 F.2d 1198, 1199 (11th Cir. 1991) (finding an argument not made is waived). Accordingly, the Court will only address the three issues noted above.

### 1.    The closed period of disability

A closed period of disability may be considered when a claimant had an impairment that: 1) prevented substantial gainful activity for at least twelve (12) months, 2) continued to or through the month of filing, and 3) ceased in or after the month of filing but prior to the date of adjudication. POMS § DI 25510.01(A).[3]  Thus, a claimant who is unable to point to a period of twelve (12) consecutive months in which she was unable to engage in substantial gainful activity, is not entitled to a closed period of social security benefits. Phillips v. Barnhart, 91 Fed. Appx. 775, 782 (3rd Cir. 2004); Kennedy v. Comm'r of Soc. Sec., 87 Fed. Appx. 464 (6th Cir. 2003).   Where the ALJ's finding that the claimant was not disabled for any time during the period from her alleged onset date to the date of the hearing is supported by substantial evidence, the ALJ does not err in failing to consider the claimant's eligibility for a closed period of disability. Jones v. Comm'r of Soc. Sec., 181 Fed. Appx. 767, 772 (11th Cir. 2006).

---

[3]POMS is the Social Security Administration's Programs Operations Manual System.

Plaintiff argues she was entitled to a closed period of disability because the time frame associated with the treatment of her impairments exceeded the twelve (12) month duration requirement. (Doc. 23, p. 4). Plaintiff contends the ALJ should have considered a fifty-two (52) week closed period of disability beginning June 14, 2005, the date Plaintiff began her treatment for Hepatitis C, and ending June 14, 2006. (Doc. 23, pp. 5-6). Plaintiff takes issue with the fact that the ALJ did not acknowledge Plaintiff's requests for a closed period of time, made after Plaintiff's hearing. (Doc. 23, p. 6). Plaintiff argues the ALJ could easily have recognized the requested twelve (12) month period from June 14, 2005 through June 14, 2006. Id.

The Commissioner argues even if the ALJ had considered the closed period requested after the hearing, the evidence does not show Plaintiff's Hepatitis C and related symptoms were disabling for the twelve (12) month period from June 2005 to June 2006. As such, the Commissioner contends the ALJ properly found Plaintiff was not entitled to a closed period of disability. (Doc. 24, p. 7).

The ALJ noted that during Plaintiff's hearing, Plaintiff requested a closed period between November 1, 2004 and March 1, 2006. (Tr. 10). Accordingly, the ALJ considered a closed period of disability between November 1, 2004, Plaintiff's alleged onset date, through December 31, 2005, Plaintiff's date of last insured. (Tr. 12, 16). The ALJ found Plaintiff did not engage in substantial gainful activity between November 1, 2004 and December 31, 2005. (Tr. 12). The ALJ also found Plaintiff was not under a disability as defined in the Social Security Act at any time during the requested closed period. (Tr. 16).

The Court finds the ALJ did not err in finding Plaintiff was not entitled to a closed

period of disability.  As previously stated, a claimant is only entitled to benefits if she is

unable to perform substantial gainful activity for a consecutive twelve (12) month period,

subsequent to her onset date.  See C.F.R. § 404.1509; Jones, 181 Fed. Appx. at 772.

Plaintiff alleged disability began November 1, 2004 due to Hepatitis C and COPD.

Therefore, in order to meet the duration requirements of the regulations, Plaintiff would

need to establish that she experienced debilitating symptoms due to her Hepatitis C or

COPD at some time from November 1, 2004 through December 31, 2005, Plaintiff's

date last insured.  However, here, Plaintiff was not referred to Shands for the evaluation

and treatment of her Hepatitis C until March of 2005, three months into the closed

period requested.  (Tr. 196).  In April 2005, Plaintiff reported feeling great, and she

denied nausea, vomiting, fever, fatigue, weight loss, and changes in appetite.  Id.

Plaintiff began her treatment for chronic Hepatitis C on June 14, 2005 and on July 7,

2005, when Plaintiff saw Dr. Shiriaeva, her only complaints were thrush and spots on

the top of her mouth.  (Tr. 503).  Plaintiff also indicated she had no pain.  Id.

Accordingly, the evidence reflective of Plaintiff's condition up to eight (8) months after

Plaintiff's alleged date of onset, indicate Plaintiff had no significant symptoms due to her

Hepatitis C and COPD.  Therefore, substantial evidence supports the ALJ's finding that

Plaintiff was not under a disability at anytime between November 1, 2004, Plaintiff's

alleged onset date, through December 31, 2005, Plaintiff's date of last insured.

Plaintiff contends the ALJ should have considered a twelve (12) month period of

disability beginning June 14, 2005 and ending June 14, 2006.  (Doc. 23, pp. 5-6).

However, the Court finds even if the ALJ had considered a twelve (12) month period

encompassing Plaintiff's forty-eight (48) week treatment, Plaintiff's impairment would not

have met the Social Security Administration's duration requirement. C.F.R. § 404.1509. The Court finds there is a five (5) month period at most, between September 2005 and January 2006, in which Plaintiff's side effects from her Hepatitis C treatment became troublesome. As such, Plaintiff failed to meet the twelve (12) month duration requirement even after the start date of her treatment. Further, in order to qualify for benefits under the Social Security Act, Plaintiff needed to establish disability prior to her date last insured, December 31, 2005. See 20 C.F.R. § 404.130(b); Hayes v. Astrue, No. 3:07-CV-137, 2009 WL 481473, at *1, n.1 (M.D. Ga. Feb. 23, 2009) ("In order to demonstrate she is entitled to disability insurance benefits, Plaintiff must establish that she became disabled prior to the expiration of her insured status."). Here, despite the record of Plaintiff's nausea, bloating, fatigue, and depression, there is no evidence Plaintiff's symptoms were significant enough to prevent substantial gainful activity prior to Plaintiff's date last insured. Accordingly, the Court will not disturb the ALJ's finding that Plaintiff was not entitled to a closed period of disability.

### 2. Whether the ALJ properly found Plaintiff's impairments non-severe

A severe impairment is an impairment which significantly limits a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) using judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). An impairment is not severe if it is a slight abnormality which has such a

minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.  Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984); see also Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (a non-severe impairment is "merely a slight abnormality which has a minimal effect on the general ability to work); Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (affirming the ALJ's finding that the claimant's impairments are not severe, as they are "mild impairments which are amenable to medical treatment").  Further, in order for an impairment to be considered "severe" within the meaning of the Social Security Regulations, the impairment must be severe enough to prevent the claimant from engaging in "substantial gainful work" for at least twelve (12) months.  Barnhart v. Walton, 535 U.S. 212, 217 (2002).

Plaintiff challenges the ALJ's determination that Plaintiff's impairments were not severe.  (Doc. 23, p. 6).  Plaintiff argues documented evidence of side effects from the medication used to treat Plaintiff's Hepatitis C and the list of Plaintiff's numerous medications shows Plaintiff experienced significant abnormalities with more than a minimal effect on her capacity to sustain work-related activities on a regular and continuing basis.  (Doc. 23, pp. 8-10).  Plaintiff argues the ALJ's failure to recognize even a threshold level of severity indicates the ALJ misjudged the weight of claimant's documented impairments and side effects.  (Doc. 23, p. 10).

The Commissioner argues the ALJ properly found Plaintiff's impairments were not severe because Plaintiff failed to show that her impairments interfered with her ability to work for any consecutive twelve (12) month period.  (Doc. 24, p. 9).  The Commissioner contends, while there is evidence showing Plaintiff experienced the side-

effects alleged at one time or another during her 48-week treatment cycle, there are no medical records showing Plaintiff's symptoms lasted beyond Plaintiff's 48-week treatment or for twelve (12) months at such a disabling level that Plaintiff was unable to work. (Doc. 24, p. 10). The Commissioner argues the evidence shows Plaintiff experienced an improvement in her "symptomatology" toward the end of her 48-week treatment cycle and certainly before the expiration of twelve (12) months, i.e. June 2006. (Doc. 24, pp. 9-10). Furthermore, the Commissioner contends there is very little evidence showing Plaintiff continued to experience disabling fatigue, bloating, gastroparesis, nausea, anemia, or other symptoms associated with the Interferon treatment, after her treatment ended in May 2006 and Plaintiff returned to work four weeks after completing her interferon treatment. (Doc. 24, pp. 10-11). Accordingly, the Commissioner argues substantial evidence supports the ALJ's finding that Plaintiff did not have a severe impairment. (Doc. 24, p. 8).

In this case, the ALJ found Plaintiff had two medically determinable impairments, Hepatitis C and COPD. (Tr. 12). However, because the ALJ determined Plaintiff's impairments did not significantly limit her ability to perform basic work-related activities for twelve (12) consecutive months, the ALJ found Plaintiff did not have a severe impairment or combination of impairments. Id. As previously discussed, at most, there was a five (5) month period, during which the record showed Plaintiff experienced persistent symptoms. See Barnhart, 535 U.S. at 217 (holding impairment lasting less than twelve (12) months is not severe within the meaning of the Social Security Regulations). However, the evidence does not indicate Plaintiff's symptoms were significant enough to prevent "substantial gainful activity" for those five (5) months, let

alone a consecutive twelve (12) months. Id.; see also 20 C.F.R. § 404.1520(c). As the Commissioner points out, while the evidence indicates Plaintiff experienced the alleged side effects including bloating, nausea, fatigue, and gastroparesis as a result of her Interferon treatment, the record also shows Plaintiff's symptoms had decreased by the end of her treatment and Plaintiff returned to work shortly after her final round of treatment.

Plaintiff started treatment on June 14, 2005 and reported occasional fatigue, bloating, persistent nausea, and depression throughout the following months. However, on March 7, 2006, at thirty-eight (38) weeks of treatment, Plaintiff reported her nausea had improved and she denied overt depression. (Tr. 415). On April 26, 2006, Plaintiff reported to Dr. Shiriaeva that her fatigue had improved and on May 16, 2006, Plaintiff received her final round of treatment at which time she reported that her abdominal bloating and nausea was much improved with Zelnorm. (Tr. 294, 404). Plaintiff still had some symptoms of anxiety, but her mood was stable. (Tr. 404). Furthermore, it appears Plaintiff's symptoms were not significant in the months immediately following her final treatment because there are no records reflecting Plaintiff's condition from May 16, 2006 through July 17, 2006, the date Plaintiff returned to work. Accordingly, the Court finds the ALJ did not err in finding Plaintiff's impairments were not severe within the meaning of 20 C.F.R. 404.1521, as Plaintiff's impairments did not interfere with her ability to perform substantial gainful activity for a consecutive twelve (12) months.

### 3. The ALJ's analysis of the medical evidence

A treating physician's opinion must be given "substantial or considerable weight unless 'good cause' is shown to the contrary." Wright v. Barnhart, 153 Fed. Appx. 678,

684 (11th Cir. 2005)(citing <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1439 (11th Cir. 1997)).  The

Eleventh Circuit has found there is "good cause" to place less weight on the opinion of a

treating physician where: (1) the opinion was not bolstered by the evidence, (2) the

evidence supported a contrary finding, or (3) the opinion was conclusory or inconsistent

with the doctor's own medical records.  <u>Id.</u>  Where an ALJ discounts or rejects a treating

physician's opinion, he/she is required to articulate her reasons for doing so.  <u>Phillips v.

Barnhart</u>, 357 F.3d 1232, 1241 (11th Cir. 2004).  An ALJ commits reversible error if she

fails to articulate reasons for discounting a treating physician's opinion.  <u>See</u> <u>Lewis</u>, 125

F.3d at 1440.

Dr. Shiriaeva opined that prior to her date last insured, Plaintiff had "a history of

one or more years [of] inability to function outside a highly supportive living arrangement

with an indication of continued need for such an arrangement," "an anxiety related

disorder, and a complete inability to function independently outside her home." (Tr.

282).  Dr. Shiriaeva indicated Plaintiff's prolonged treatment for Hepatitis C caused

severe physical and psychological side-effects.  <u>Id.</u>  Dr. Shiriaeva also opined Plaintiff's

severe physical limitations made her unable to work due to fatigue so strong she

wanted to lie down all the time.  (Tr. 284).

Plaintiff argues the ALJ "mechanistically rejected Dr. Shiriaeva's opinion of

Plaintiff's limitations."  (Doc. 23, p. 12).  Specifically, Plaintiff contends the ALJ failed to

properly analyze Dr. Shiriaeva's opinion because the ALJ only referenced exhibit 9F

and failed to acknowledge the multiple progress notes and consulting test reports from

Shands found in exhibits 3F, 9F, and 13 F, relative to the treatment provided by Dr.

Shiriaeva.  <u>Id.</u>  Plaintiff contends all three exhibits evidence the fact that Dr. Shiriaeva

had ongoing access to laboratory reports and saw Plaintiff almost every two weeks throughout the time relative to the requested closed period of disability.  Id.  Plaintiff points out that Dr. Shiriaeva's opinion of the severity of Plaintiff's impairments through the date last insured was based on the frequency of Plaintiff's visits and Dr. Shiriaeva's receipt of regular consultative reports from Shands clinic.  (Doc. 23, p. 15).

The Commissioner argues the ALJ properly considered and rejected the opinion of Dr. Shiriaeva.  (Doc. 24, p. 13).  Specifically, the Commissioner contends the ALJ's decision is supported by substantial evidence because Dr. Shiriaeva's opinion was given in April 2006 while Plaintiff was still undergoing treatment and therefore, it is not relevant to Plaintiff's functional ability after her Interferon treatment ceased.  (Doc. 24, p. 15).  The Commissioner argues although Dr. Shiriaeva opined Plaintiff was disabled, the ALJ had substantial reasons for rejecting the opinion because the evidence does not show Plaintiff's impairments and allegedly disabling symptoms lasted for a minimum of twelve (12) consecutive months.  Id.

Here, the ALJ considered Dr. Shiriaeva's statement that Plaintiff was disabled, but noted the issue of whether a claimant can work is a finding of fact reserved to the Commissioner.  (Tr. 15).  Further, the ALJ found the medical records did not indicate the level of impairment described by Dr. Shiriaeva and determined Dr. Shiriaeva's opinion that Plaintiff was disabled was "neither buttressed, nor explained by any laboratory results or clinical findings in the file."  (Tr. 15).  Finally, it seems the ALJ reasoned that since Plaintiff returned to work a few months after ending treatment and Dr. Shiriaeva's assessment was completed while Plaintiff was still undergoing treatment, Dr. Shiriaeva's evaluation was not entitled to substantial weight.  Id.

While the Court does not find the fact that Dr. Shiriaeva's opinion was provided while Plaintiff was still undergoing treatment is a reason to discredit Dr. Shiriaeva's opinion, the Court finds the ALJ established good cause to place limited weight on Dr. Shiriaeva's opinion. See Phillips, 357 F.3d at 1241. Dr. Shiriaeva referred Plaintiff for evaluation and treatment of her Hepatitis C in March of 2005. (Tr. 196). Plaintiff began her treatment for Hepatitis C on June 14, 2006 and Dr. Shiriaeva saw Plaintiff on a bi-weekly basis throughout her 48-week treatment cycle and had access to on-going reports from her clinical reports. (Tr. 468). Dr. Shiriaeva's records dated July 2005 through April 2006, showed Plaintiff experienced occasional symptoms of fatigue, frequent anxiety and depression, and persistent nausea, bloating, and abdominal pains while she was undergoing treatment for Hepatitis C. (Tr. 301, 326, 330, 331, 335, 346, 348, 502, 500). First, while fatigue was noted in Dr. Shiriaeva's notes on August 16, 2005 and August 18, 2005, there was no indication Plaintiff's fatigue was as severe as Dr. Shirieava indicated in her medical opinion. (Tr. 464, 500). Dr. Shiriaeva's records indicate Plaintiff's fatigue had improved by the end of her treatment. (Tr. 294). Yet, Dr. Shiriaeva opined Plaintiff had severe physical limitations and was unable to work because of fatigue so strong Plaintiff wanted to lie down all the time. (Tr. 284).

Second, Plaintiff's nausea improved with medication, and while Dr. Shiriaeva's records indicate Plaintiff continued to experience symptoms of anxiety and depression, Plaintiff was taking medication for these symptoms and other records show her mood was stable. (Tr. 294, 301, 306, 307, 415, 442). Additionally, Dr. Shiriaeva's records only indicate Plaintiff experienced the noted symptoms for approximately five (5) months. Nevertheless, Dr. Shiriaeva opined that prior to her date last insured, Plaintiff

had "a history of **one or more years** [of] inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement," "an anxiety related disorder, and a complete inability to function independently outside her home." (Tr. 282).

Finally, Dr. Shiriaeva indicated Plaintiff would have difficulty working a regular job on a sustained basis due to the Hepatitis C and the side effects from the treatment. <u>Id.</u> However, the evidence indicates Plaintiff experienced significant side effects for less than twelve (12) months, Plaintiff ended her treatment on May 16, 2006, and Plaintiff returned to work on July 17, 2006, only a few months after Dr. Shiriaeva provided her opinion. (Tr. 536). As such, Dr. Shiriaeva's opinion was not bolstered by the evidence and was inconsistent with the doctor's own medical records. Accordingly, the Court finds substantial evidence supports the ALJ's decision to place limited weight on the opinion of Dr. Shiriaeva.

## IV.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  24th  day of August, 2009.


_Monte C. Richardson_
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

26

Copies to:
Counsel of Record